# IN THE SUPREME COURT OF TEXAS

No. 20-0819

IN RE STEVEN HOTZE, M.D., HARRIS COUNTY REPUBLICAN PARTY,
HON. KEITH NIELSEN, AND SHARON HEMPHILL, RELATORS

ON PETITION FOR WRIT OF MANDAMUS

JUSTICE DEVINE dissenting from the Court's order denying the petition for writ of mandamus and motion for stay.

"It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. 137, 177 (1803). This Court has stated in no uncertain terms that county election officials possess only those powers "granted in express words" or "necessarily or fairly implied in an express grant." *State v. Hollins*, No. 20-0729, 2020 WL 5919729, at *4 (Tex. Oct. 7, 2020) (per curiam) (internal quotations omitted). These implied powers are themselves narrow—they must be "indispensable," "not simply convenient." *Id.* The powers are governed by a "lengthy, detailed, and comprehensive Election Code." *Id.* at *2. Acts by election officials that are outside the scope of the Election Code constitute *ultra vires* conduct that undermine the integrity of the election process. *See Richardson v. Hughs*, No. 20-50774, 2020 WL 6127721, at *1–2 (5th Cir. Oct. 19, 2020). Though certain enumerated powers may create a narrow range of implied powers, the Legislature's silence on an issue raises the presumption that it has *not* granted that power. *Guynes v. Galveston Cnty.,* 861 S.W.2d 861, 868 (Tex. 1993) (Gammage, J., dissenting) ("The Legislature's *omission* of special express authority . . . indicates it intended none."); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("[W]e believe every word excluded from a statute must also be presumed to have been excluded for a purpose.").

Not granting today's stay gives Harris County Election Clerk Chris Hollins the benefit of the doubt and suggests that a state official's blessing can otherwise cure an *ultra vires* act.[1] As such, I would grant Relators' motion to stay to ensure compliance with the Code and to give this Court the opportunity to consider whether the novel drive-thru voting measure qualifies as a "polling place" under section 64.009(a) or whether it is a grave departure from the express language of the statute.

The Election Code mandates that a registered voter cast a ballot in a "voting station" at a "polling place." *See* TEX. ELEC. CODE §§ 64.001, .009(a). Certain individuals may request their ballot curbside in a vehicle on election day and throughout the early voting period. *Id.* § 64.009(a). This exception applies only to those physically unable to enter the polling place without assistance or for whom a likelihood of injury exists. *Id.*; *see also In re State*, 602 S.W.3d 549, 550 (Tex. 2020) (a voter's general fear or lack of immunity from COVID-19 is not a "disability" as defined by the Election Code). Otherwise, voting is to take place in a "polling place." TEX. ELEC. CODE § 64.009(a). Hollins contends that rows of semi-permanent tents where election officers stand awaiting dozens of cars, inside of which any voter may cast a ballot, qualify as a "polling place." I struggle to see how the Election Code contemplates such a novel concoction.

Hollins stretches the text of the Code beyond its historical and common-sense understanding. The Texas Election Code states that polling locations "may be located in any stationary structure," including a "movable structure." *Id.* § 85.062(b). Hollins argues that these

---

[1] Hollins argues that the Secretary of State acquiesced to drive-thru voting in litigation earlier this summer. But a recent guidance letter from the Attorney General supports Relators' position that drive-thru voting may not be a permissible form of voting under the Code. Guidance Letter from Ken Paxton, Tex, Att'y Gen., to Tex. Elections Offs. (Oct. 16, 2020), https://www.texasattorneygeneral.gov/sites/default/files/images/admin/2020/Press/Elections%20Guidance%20Letter%20-%20Drive-Thru.pdf ("[T]he Code makes no provision for 'drive-thru' voting centers at which any voter may cast a ballot from his or her vehicle regardless of physical condition.").

"tents" satisfy the requirements of movable structure. But that interpretation goes beyond the plain language of the statute and cannot be harmonized with other demands of the Code.

First, the Code likely contemplates that "structure" is a place one enters to get to the polling place; the structure itself is not the polling place. For instance, the Code prohibits electioneering "within 100 feet of an outside door through which a voter may enter the building or structure *in which* the early voting polling place is located." *Id.* § 85.036(a) (emphasis added). The prepositional phrase "in which" indicates that the polling place is to be inside of a building or structure. The structure itself cannot be the polling place and the voting station rolled into one.

Even harder to understand is how one's vehicle could qualify as a "polling place," as it is not a "structure" as commonly understood. Nor can one's vehicle be a "voting station," which is a specific location designated for voters to cast a ballot. *Station*, WEBSTER'S NEW COLLEGIATE DICTIONARY (1975) ("[*A*] *place established* to provide a public service." (emphasis added)). Hollins' expansion of the statute manifests itself in the absurd result that every voter's vehicle is a "polling place" or "voting station."

Second, voting stations must always be in view of the election officer, TEX. ELEC. CODE § 62.004(1), and voting station occupancy is limited to the voter, children under 18 accompanying the voter, and permissible interpreters, *id.* §§ 64.002, 61.031. However, an affidavit submitted by one election officer raises serious doubts as to whether Harris County is enforcing these requirements at their drive-thru voting locations.

Moreover, though the Election Code may afford a county clerk some discretionary power to manage elections, that discretion is limited to "indispensable" implied powers. *See Hollins*, 2020 WL 5919729, at *4 (sending out mass applications was not indispensable even against arguments that the COVID pandemic would prevent a number of persons from voting in person). As I have

3

discussed, it is hard to decipher how an election officer can conclude that the Election Code expressly allows drive-thru voting. Denying review of whether a clerk's implied managerial power allows him to create a new method of voting is striking, especially given that we have not seen mass drive-thru voting in elections before this year. Though there may be "countervailing concerns" that drive-thru voting will make voting unsafe, we, the Court, should take no sides to this policy debate. *Id.* at \*1.

Hollins does not make a clear case that granting a stay will prevent voters from exercising their right to vote. Curbside voting and other legislative accommodations are still available to those who need assistance. *See* Tex. Elec. Code §§ 64.009(a); 82.001–.004. In fact, Harris County has an unprecedented 112 early voting locations and 798 election day locations where curbside voting is available. And only 9.8% of in-person voters have used drive-thru voting thus far. Staying drive-thru voting to determine whether these rows of semi-permanent tents qualify as "polling places" would only aid in the voters' confidence in the outcome of our election.

It is hard to see how creating a drive-thru voting process is not simply a way to side-step the Legislature's narrow allowance of curbside voting. The Legislature has already spoken on when a person may vote in a vehicle. In fact, the Legislature chose *not* to expand the groups of persons eligible to vote curbside. Most recently, House Bill 2898 was intended to allow voters accompanied by a child five years of age or younger to be eligible to vote curbside. Tex. H.B. 2898, 86th Leg., R.S. (2019). House Bill 2898 made its way through the House but was stopped in its tracks at the Senate. Today, Hollins asks this Court to not only revive a dead bill, but to legislate from the bench by acquiescing to a broad expansion of his powers.

Simply put, by creating drive-thru voting locations, Hollins acts beyond his discretion. I would grant the stay until this Court can determine whether this novel procedure of drive-thru

voting is in fact permitted under the Texas Election Code. By denying relief, Relators—one of whom is on the ballot in the general election—are left with no remedy. Without such relief, thousands of ballots continue to be cast through what is likely an unauthorized voting procedure.


 

                                               _____

John P. Devine
Justice


**OPINION DELIVERED:** October 22, 2020

5